**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | Criminal No. C-06-782-1 |
| | § | |
| VERMON KELLEY, | § | |
| | § | |
|     Defendant. | § | |
| | § | |

<u>**ORDER**</u>

On this day the Court held a hearing on the admissibility of the September 8th and September 12th, 2006 statements of Mr. Lee Kelley, a codefendant of Defendant Vermon Kelley.  The Court makes the following findings of fact and conclusions of law with respect to the above referenced statements.

<u>**FINDINGS OF FACT**</u>

1.   On September 8, 2006 pursuant to a search and arrest warrant, law enforcement officers entered Defendant Vermon Kelley's ("Defendant") residence at 721 West Point Street, Corpus Christi, Texas.

2.   Upon entering the residence, officers discovered three individuals: the Defendant, the Defendant's nephew Mr. Lee Kelley, and Wanda Sherrill.  The police officers handcuffed all three individuals and proceeded to search the residence.

3.   Upon searching the residence, the police officers founds several firearms, as well as crack-cocaine, marijuana, and drug paraphernalia.

4.   The police officers advised Mr. Lee Kelley of his <u>Miranda</u> rights.  Mr. Lee Kelley waived his rights and gave a statement to the police officers ("the September 8th statement").   In the September 8th statement, Mr. Lee Kelley advised the officers that all the drugs and guns in the residence belonged to him.  He also told the police officers of the location of at least two of the guns in the house, and told the officers that there were drugs in the bathroom.  Police officers did in fact find drugs and guns in the locations described by Mr. Lee Kelley.  The officers also found marijuana and crack-cocaine on Mr. Lee Kelley's person.

5.   On September 12th, 2006 agents with the Bureau of Alcohol Tobacco, Firearms, and Explosives interviewed Mr. Lee Kelley. Mr. Lee Kelley was again advised of his <u>Miranda</u> rights, but waived his rights and agreed to make another written statement ("the September 12th Statement").   Mr. Lee Kelley signed an affidavit under oath and penalty of perjury, once again claiming ownership of the drugs and guns found in the Defendant's house.  Mr. Lee Kelley explained that he kept the drugs and guns at Defendant's house because he knew that he had an outstanding warrant for his arrest and could not keep the drugs and guns at his own residence.  Mr. Lee Kelley also explained that he dealt crack-cocaine out of the Defendant's house and the guns had been given to him in exchange for crack-cocaine.

6. On December 13, 2006 a grand jury returned a three count indictment against Mr. Lee Kelley, Wanda Sherrill, and the Defendant. (DE 1.) Counts One and Two charged all three individuals with violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); as well as 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Count Three charged the Defendant with violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

7. On February 26, 2007, Mr. Lee Kelley pled guilty to Count One and Count Two of the Indictment. During the plea, the Assistant United States Attorney gave a factual rendition of the case that included the fact Mr. Lee Kelley had (1) claimed full responsibility for all of the drugs and guns located in the house, and (2) stated to officers that he kept the drugs and guns at the Defendant's residence because he could not keep everything in his own residence due to an outstanding warrant. The Assistant United States Attorney also informed the Court that the Government had evidence that Mr. Lee Kelley was in fact dealing crack-cocaine out of the Defendant's residence. Mr. Lee Kelley indicated to the Court under oath that he had heard the statement of the Assistant United States Attorney, that the factual statement was correct, and that he did not wish to disagree with or add to the statement.

8. During pretrial proceedings, the parties were notified that Mr. Lee Kelley intended to invoke his Fifth Amendment right not to testify at Defendant's trial. Therefore, at a Final

3

Pretrial Conference on February 26, 2007, all parties agreed to call Mr. Lee Kelley to the witness stand so he could formally invoke the privilege, rather than waiting until trial. Mr. Lee Kelley did in fact invoke his Fifth Amendment rights and refused to answer any questions.

9.   The Court finds that Mr. Lee Kelley, having invoked his Fifth Amendment privilege against self-incrimination, is unavailable to testify in the Defendant's case within the meaning of Federal Rule of Evidence 804(a)(1).

10.   The Court also finds that Mr. Lee Kelley's September 8th and September 12th, 2006 statements to law enforcement officers (as well as his February 26, 2007 guilty plea before this Court) tended to subject him to criminal liability to such an extent that a reasonable person in his position would not have made the statements unless he believed them to be true.

11.   Finally, the Court finds that Mr. Lee Kelley's September 8th and September 12th, 2006 statements claiming ownership of the drugs and guns are corroborated by circumstances clearly indicating the trustworthiness of the statements. In particular, the Court finds that:

a.   When the September 8th and September 12th statements were made, Mr. Lee Kelley had not yet been indicted and, in making the statements, he subjected himself to an almost certain risk of prosecution on serious criminal charges;

4

b.    Mr. Lee Kelley made the September 8th statement
      spontaneously and voluntarily without prompting from
      Defendant Vermon Kelley or law enforcement;

c.    Both the September 8th and September 12th, 2006
      statements were made after Mr. Lee Kelley was given
      <u>Miranda</u> warnings and waived his right to remain silent;

d.    Mr. Lee Kelley's September 12th statement, as well as his
      February 26, 2007 guilty plea, were both made under oath
      and penalty of perjury;

e.    Mr. Lee Kelley repeated his initial claim that he owned
      the drugs and guns and was consistent in his story;

f.    Mr. Lee Kelley's statements claiming ownership of the
      drugs and guns did not merely claim responsibility, but
      also provided a motive for why he kept the drugs and guns
      at the Defendant's house.  Mr. Lee Kelley's statements
      also provided law enforcement officers with some factual
      specificity, including: (1) that he dealt crack-cocaine
      out of his uncle's home, and (2) that he received the
      guns in exchange for the crack-cocaine; and

g.    Mr. Lee Kelley's statements that he owned all the drugs
      and gun in the house were also corroborated by the fact
      that he had drugs on his person, and correctly described
      to the police officers the location where some of the
      drugs and guns could be found in the house.

5

## CONCLUSIONS OF LAW

1.  Federal Rule of Evidence 804(b)(3) provides a hearsay exception to "statements against interest" where the declarant is "unavailable" to testify.  In particular, the Rule provides an exception for:

    > **(3) Statement against interest.**  A statement which was at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

    Fed. R. Evid. R. 804(b)(3).

2.  A statement against penal interest, offered to exculpate the Defendant is not admissible unless three elements are met:

    (1)  the declarant must be unavailable;

    (2)  the statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and

    (3)  the statement must be corroborated by circumstances clearly indicating its trustworthiness.

    United States v. Triplett, 922 F.2d 1174, 1182 (5th Cir. 1991); see also United States v. Briscoe, 742 F.2d 842, 846 (5th Cir. 1984).

3.  A declarant is legally unavailable to testify within the meaning of Federal Rule of Evidence 804(a)(1) where he or she

invokes the Fifth Amendment privilege and refuses to testify. Fed. R. Evid. 803(a)(1); <u>United States v. Young Bros., Inc.</u>, 728 F.2d 682 (5th Cir. 1984) (witnesses were unavailable where "each indicated that if called to testify he would invoke his privilege against self-incrimination"); <u>see also</u> <u>United States v. Thomas</u>, 571 F.2d 285, 288 (5th Cir. 1978); <u>United States v. Bumpass</u>, 60 F.3d 1099, 1102 (4th Cir. 1995); <u>Whelchel v. Washington</u>, 232 F.3d 1197, 1204 (9th Cir. 2000); <u>United States v. Silverstein</u>, 732 F.2d 1338, 1346 (7th Cir. 1984).

4. In determining whether there are corroborating circumstances clearly indicating trustworthiness, courts may consider, among other things: (1) whether the declarant, at the time of making the statement, was still exposed to prosecution for making the statement and the *extent* to which the declaration is truly against the declarant's penal interest; (2) the timing of the statement and whether the statement was made spontaneously, (3) whether other people heard the out-of-court statement and the party or parties to whom the statement was made; (4) whether the declarant repeated the statement and did so consistently; (5) the relationship of the declarant with the accused, and whether there was any apparent motive or reason for the declarant to lie or misrepresent the matter; (6) whether the statements were made under oath or made after <u>Miranda</u> warnings were given; and (8) the nature and strength of independent evidence relevant to the conduct in question.

See, e.g., United States v. Lowe, 65 F.3d 1137, 1145-46 (4th Cir. 1995); United States v. Rasmussen, 790 F.2d 55, 56 (8th Cir. 1986); United States v. Guillette, 547 F.2d 743, 754 (2d Cir. 1976); United States v. Thomas, 571 F.2d 285, 290 (5th Cir. 1978); see also United States v. Satterfield, 572 F.2d 687, 693 (9th Cir. 1978) (considering whether the context in which a statement was made "suggests it was spontaneous and therefore more reliable"); United States v. Garcia, 897 F.2d 1413, 1421 (7th Cir. 1990) (considering whether the statements were made after Miranda warnings); United States v. Friel, 588 F.Supp. 1173, 1185 (D. Pa. 1984).

5.   "The requirement of corroborating circumstances need not remove all doubt with respect to the hearsay statement, but rather the requirement only mandates corroborating circumstances clearly indicate the trustworthiness of the statement." United States v. Lowe, 65 F.3d 1137, 1145-46 (4th Cir. 1995).

6.   The September 8th and September 12th, 2006 statements are statements against penal interest, which have been clearly corroborated by circumstances indicating the statements' trustworthiness, and therefore fall within the exception of Federal Rule of Evidence 804(b)(3).

## CONCLUSION

For the reasons stated above, the Government's Motion in Limine (DE 52) is DENIED to the extent that it seeks to exclude any evidence of the September 8th and September 12th, 2006 statements.

SIGNED and ENTERED this 2nd day of March, 2007.

_____
Janis Graham Jack
United States District Judge