**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| | § | |
| UNITED STATES OF AMERICA | § | |
| | § | Criminal Action |
| v. | § | No. C-06-782 |
| | § | |
| VERMON KELLEY | § | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On this day came on to be considered Defendant Vermon Kelley's motion to suppress (D.E. 55).  For the reasons set forth below, Defendant's motion to suppress is hereby DENIED.

## I.   Background

On September 8, 2006, pursuant to a search and arrest warrant, law enforcement officers entered Defendant Vermon Kelley's residence in Corpus Christi, Texas.  (D.E. 55, Motion, p. 2; D.E. 56, Government's Response, p. 1).  The search and arrest warrant did not require the law enforcement officers to knock and announce their presence before entering Defendant's residence.  (Response, p. 1).  Rather, the search and arrest warrant stated that the affiant, Officer Todd Beach, had reason to believe that a knock and announce would place the safety of police officers in peril. (Id.).  Specifically, in Paragraph 4 of the search and arrest warrant (Govt. Exh. A)[1], affiant Officer Beach stated that he had received information from a reliable confidential informant that

---

[1]Government's Exhibit A was only admitted into evidence for the purpose of the hearing on Defendant's motion to suppress. Government's Exhibit A is a sealed exhibit.

the Defendant was selling crack cocaine out of his residence, and that the informant had seen Defendant with firearms in his possession and within Defendant's close reach.  Affiant Officer Beach stated that based on the above, he had a reasonable belief "THAT A KNOCK AND ANNOUNCE WOULD PLACE THE OF OFFICERS IN PERIL". (Govt. Exh. A, ¶ 4) (emphasis in original).

After entering Defendant's residence, law enforcement officers located the Defendant close to his bed.  (Id.).  The officers observed a handgun in plain view on the bed, very close to the Defendant. (Id.; Motion, p. 2).[2]  The officers proceeded to arrest and handcuff the Defendant.  (Motion, p. 2; Response, p. 2). Immediately thereafter, Officer Beach asked the Defendant if there were any other weapons in the room and the residence, in addition to the gun in plain view on the bed.  (Id.).  Defendant responded that there were other guns located on the bed, as well as in the bedroom closet.  (Id.).

Defendant now seeks to suppress the statement he made to Officer Beach regarding the additional guns, on the grounds that Defendant made the statement while in custody, but without having been given his Miranda warnings.  (Motion, pp. 2-4).  See Miranda v. Arizona, 384 U.S. 436, 472 (1966).  The government filed a

---

[2]At the March 2, 2007 hearing on Defendant's motion to suppress, Officer Todd Beach testified that a gun was also in plain view in the room closest to the door where officers entered the residence.  This later turned out to be a BB gun, but police officers did not know this fact until after the events in question took place.

response   to   Defendant's   motion   to   suppress,   arguing   that
Defendant's statement falls within the "public safety" exception to
the Miranda rule (D.E. 56).   (Response, p. 2).

## II.   Discussion

### A.   Public Safety Exception to the Miranda Rule

In Miranda v. Arizona, the Supreme Court held that before a
suspect is subjected to custodial interrogation, law enforcement
officers must inform the suspect of his right to silence and right
to counsel. See Miranda, 384 U.S. at 472.   In Miranda, the Supreme
Court also held that certain warnings must be given before a
suspect's statement made during custodial interrogation may be
admitted into evidence. See id. at 479.

In New York v. Quarles, 467 U.S. 649, 655-58 (1984), the
Supreme Court established a "public safety" exception to the rule
set forth in Miranda v. Arizona.   Quarles, 467 U.S. at 655-56
("there is a 'public safety' exception to the requirement that
Miranda warnings be given before a suspect's answers may be
admitted into evidence, and ... the availability of that exception
does not depend upon the motivation of the individual officers
involved.").   In the Quarles case, a woman told police officers
that she had been raped, and that her assailant had just entered a
nearby supermarket while carrying a gun.   See id. at 651-52.
Police officers apprehended and handcuffed the suspect in the
supermarket, although he did not have the gun on his person.   See

id. at 652.  A police officer asked the suspect where the gun was located, and the suspect informed the officer of the gun's location.  See id.  At his later trial, the suspect sought to suppress his statement regarding the location of the gun.  See id. The Supreme Court held that the statement was admissible, reasoning that "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."  Id. at 657.

Several Fifth Circuit cases have also addressed the application of the public safety exception to the Miranda rule.  In United States v. Braithwaite, 458 F.3d 376, 382 n. 8 (5th Cir. 2006), the Fifth Circuit found that the public safety exception did not apply in a case where officers performed two security sweeps of the defendant's residence prior to asking the defendant if there were any weapons in the house.  In Braithwaite, all occupants of the defendant's residence had been handcuffed prior to the officers asking the defendant about the existence of guns in the residence. See id.

In Fleming v. Collins, 954 F.2d 1109, 1114 (5th Cir. 1992) (en banc), the Fifth Circuit held that the public safety exception did apply in a case where police officers asked a suspected bank robber about the location of his gun.  In Fleming, a sole individual attempted to rob a bank in Dallas, and was shot by a bank security

guard in the process.  See id. at 1109.  The suspect ran out of the
bank and was apprehended at gunpoint by a private citizen.  See id.
at 1110.  The police officers arrived to find the suspected robber
being held on the ground, with the private citizen pointing his gun
at the robbery suspect.  See id.  The police officers had their
guns drawn at the time.  See id. at 1110-11.  After determining
that the man on the ground was the suspected robber, the police
officers asked the suspect of the location of his gun.  See id. at
1111.  The suspect responded that he dropped the gun, and that he
did not get any money in the attempted robbery.  See id.  At his
trial, the suspected robber moved to suppress those statements, on
the grounds that he made them without receiving his Miranda
warnings.  See id. at 1109.  The Fifth Circuit held that the public
safety exception applied to the circumstances of the case, noting
the volatile, confusing situation with guns drawn by several people
on the scene.  See id. at 1112-14.  The Fifth Circuit noted that
one of the police officers testified that she did not know if the
suspected robber had any accomplices nearby, and she feared being
"shot in the back".  Id. at 1113.  Accordingly, the Fleming Court
held that "Quarles entitled the police to neutralize this dangerous
confrontation before Miranda took hold.  The district court
properly applied the public safety exception."  Id. at 1114.

B.    **The Public Safety Exception Applies to Vermon Kelley's Statement Regarding the Additional Guns in His Residence**

1.    **Execution of the Search and Arrest Warrant**

At the March 2, 2007 hearing on Defendant's motion to suppress, Officer Todd Beach of the Corpus Christi Police Department testified regarding the execution of the search and arrest warrant on September 8, 2006. Officer Beach testified that there were thirteen officers on the scene when the warrant was executed, after dark. Prior to executing the search and arrest warrant, Officer Beach testified that law enforcement officers only expected to find the Defendant and a female named "Wanda" in the home. However, when officers attempted to enter the Defendant's residence by breaking in the door, officers encountered resistance from Defendant's nephew Lee Kelley, who tried to prevent police from entering the residence. After overcoming Lee Kelley's efforts to prevent them from entering, officers successfully broke in the door and entered the residence, going in with their guns drawn. Officers on the scene subdued and handcuffed Lee Kelley. Officer Beach, who was the first officer through the door, testified that upon entering the house, the officers immediately saw a gun in plain view in the first room the officers entered.[3] Officer Beach

---

[3] As referenced above, the gun in the first room officers entered was later determined to be a BB gun. However, the officers on the scene were not aware that the gun was a BB gun until later. The pertinent fact for the instant motion to suppress is that there was a gun in plain view when officers

and other officers then proceeded to an adjoining bedroom, where they found the Defendant and Ms. Wanda Sherrill.  Officer Beach observed a gun in plain view on the bed, near Defendant Vermon Kelley.  Officer Beach and one other officer handcuffed the Defendant, and two other officers simultaneously handcuffed Ms. Sherrill.  While the Defendant and Ms. Sherrill were being subdued, a third group of officers began a security sweep of the home. Before the security sweep was completed, Officer Beach asked the Defendant whether there were any other guns in the house, and Defendant then made his statement regarding the location of additional guns on the bed and in the bedroom closet.  All of these events occurred within sixty seconds of the officers' entry into the home, and before the Defendant was Mirandized.

### 2.   Application of the Public Safety Exception

The instant case is akin to the situations described above in Quarles and Fleming.  Law enforcement officer safety was an issue in this case even before the officers entered the Defendant's residence pursuant to the search and arrest warrant.[4]  Per the search and arrest warrant, the officers were entering into a situation where the Defendant was believed to have been dealing

---

first entered the home.

[4]As noted above, affiant Officer Beach stated in the search and arrest warrant that he had reason to believe that a knock and announce would place the safety of the officers in peril.  (Govt. Exh. A, ¶ 4).

crack cocaine out of his residence, and where a confidential informant had seen the Defendant with guns in his possession and within his reach. (Govt. Exh. A, ¶ 4). Once officers entered the home, they immediately encountered guns out in plain view, as well as a person they did not expect to be in the residence (Lee Kelley). It was in this context that Officer Beach asked the Defendant about the location of the additional guns, with thirteen officers on the scene and the security sweep still in progress. Given the objective circumstances of the case, with the confidential informant's information regarding Defendant's drug dealing and gun possession, as well as the possibility of other persons in the house with access to weapons, it was reasonable for Officer Beach to be concerned for his own safety and those of the other officers. Just as in the <u>Fleming</u> case, this was a volatile and confusing situation, where the officers' safety was at issue. See <u>Fleming</u>, 954 F.2d at 1112-14. Accordingly, this Court finds that Defendant's statement regarding the additional guns is admissible, under the public safety exception to the <u>Miranda</u> rule. Defendant's motion to suppress is therefore denied.

## III. **<u>Conclusion</u>**

For the reasons stated above, the Court hereby DENIES

Defendant  Vermon  Kelley's  motion  to  suppress  (D.E.  55).

SIGNED and ENTERED this 2nd day of March, 2007.

_____
Janis Graham Jack
United States District Judge